AO 241 (Rev. 5/85)

**PETITION UNDER 28 USC § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

| | | |
|---|---|---|
| # United States District Court | District | Massachusetts |
| Name Christopher N. Vinton | Prisoner No. W-62596 | Case No. 53455 |

Place of Confinement: Massachusetts Correctional Institution, Cedar Junction
P.O. Box 100
South Walpole, Massachusetts 02071

| Name of Petitioner (include name under which convicted) | Name of Respondent (authorized person having custody of petitioner) |
|---|---|
| Christopher N. Vinton | V. Peter Allen, Superintendent, MCI Cedar Junction |

The Attorney General of the State of: Massachusetts

04-10209

PETITION *Referred to MJ JLAlexander*

1. Name and location of court which entered the judgment of conviction under attack  Worcester Superior Court, 2 Main Street, Worcester, Mass. 01608

2. Date of judgment of conviction  May 1, 1997

3. Length of sentence  1st Degree Life Sentence/ No Parole

4. Nature of offense involved (all counts)  Murder in the First Degree/ Deliberate Premeditation

5. What was your plea? (Check one)
   (a) Not guilty  ☒ x
   (b) Guilty  ☐
   (c) Nolo contendere  ☐
   If you entered a guilty plea to one count or indictment, and not a guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury  ☒
   (b) Judge only  ☐

7. Did you testify at the trial?
   Yes ☒  No ☐

8. Did you appeal from the judgment of conviction?
   Yes ☒  No ☐

(2)

9. If you did appeal, answer the following:

   (a) Name of court __Massachusetts Supreme Judicial Court__

   (b) Result __Conviction affirmed__

   (c) Date of result and citation, if known __September 5, 2000 (432 Mass. 180).__

   (d) Grounds raised __Ineffective Assistance Of Counsel/ 2. Inconsistent Jury Instructions/ 3. Failure To Instruct/ 4. Erroneous Jury Instruction/ 5. Denial Of Evidentiary Hearing.__

   (e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

   (1) Name of court _____

   (2) Result _____

   (3) Date of result and citation, if known _____

   (4) Grounds raised _____

   (f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

   (1) Name of court __N/A__

   (2) Result _____

   (3) Date of result and citation, if known _____

   (4) Grounds raised _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
    Yes ☒   No ☐

11. If your answer to 10 was "yes," give the following information:

    (a) (1) Name of court __Worcester Superior Court__

    (2) Nature of proceeding __Motion For A New TRial (Mass. R.Crim. P. 30 (b) and Supplemental Motion For A New TRial With Request For Evidentiary Hearing.__

    (3) Grounds raised __Ineffective Assistance of Counsel/** Note: This Motion For A New TRial was consolidated with defendant's plenary appeal.__

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐    No ☒x

(5) Result ___Motions Denied___

(6) Date of result ___July 2, 1998___

(b) As to any second petition, application or motion give the same information:

(1) Name of court ___Worcester Superior Court___

(2) Nature of proceeding ___Motion For New Trial (Second) (Mass. R. Crim. P. 30(b) and Motion For Evidentiary Hearing And Request For Funds.___

(3) Grounds raised ___Ineffective Assistance Of Trial Counsel and Appellate Counsel.___

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☒x    No ☐

(5) Result ___Motion For A New TRial (Second) denied.___

(6) Date of result ___September 27, 2001; November 30, 2001 & September 23, 2003___

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?
(1) First petition, etc.        Yes ☒x    No ☐
(2) Second petition, etc.       Yes ☒x    No ☐

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting the same.
    Caution: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

(4)

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted you state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.
(b) Conviction obtained by use of coerced confession.
(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
(i) Denial of effective assistance of counsel.
(h) Denial of right of appeal.

A.   Ground one: _Ineffective Assistance of Trial Counsel_

Supporting FACTS (state *briefly* without citing cases or law) _(See attached)(P. 8-14)._

B.   Ground two: _Inconsistent Instructions Relative To The Commonwealth's Burden Of Proof In Proving Manslaughter._

Supporting FACTS (state *briefly* without citing cases or law) _(See attached)(P. 14-17)._

(5)

C.  Ground three: Erroneous Instruction On The Use Of Excessive Force Relative To Manslaughter Which Lowered The Commonwealth's Burden Of Proof.

Supporting FACTS (state *briefly* without citing cases or law) (See attached)(P. 17-18).

D.  Ground four: Failure To Instruct The Jury That They Must Find First Prong Malace In Order To Find Defendant Guilty Of 1st Degree Murder By Means Of Deliberate Premeditation.

Supporting FACTS (state *briefly* without citing cases or law) (See attached)(P. 18-20).

E.  Ground Five: Ineffective Assistance Of Appellate Counsel.

Supporting Facts: (See attached) (P. 20-21).

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them:

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
    Yes ☐     No ☒

15. Give the name and address, if known, of each attorney who represented you in the following stages of judgment attacked herein:

    (a) At preliminary hearing   Darius A. Arbabi, 161 Worcester Road, Framingham, Mass. 01701

    (b) At arraignment and plea   Same as above.

(6)

AO 241 (Rev. 5/85)

(c) At trial  Darius Arbabi, 161 Worcester Road, 3rd Floor, Framingham, Mass. 01701.

(d) At sentencing  Same as above.

(e) On appeal  Elaine M. Pourinski, 13 Old South Street, Northampton, Mass. 01060.

(f) In any post-conviction proceeding  First Motion For A New Trial; Elaine M. Pourinski, 13 Old South Street, Northampton, Mass. 01060.

(g) On appeal from any adverse ruling in a post-conviction proceeding  Second Motion For A New Trial, etc - David Keighley, Esq., P.O. Box 783, Fairhaven, Mass. 02719.

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and the same time?
Yes ☐    No ☒

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐    No ☒
(a) If so, give name and location of court which imposed sentence to be served in the future: _____

(b) Give date and length of the above sentence:  First Degree Life Sentence (No Parole).

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐    No ☒

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

1-9-04
(date)

_____
Signature of Petitioner

(7)

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

CASE NO._____

CHRISTOPHER N. VINTON
Petitioner

v.

PETER ALLEN
Respondent

---

PETITION UNDER USC § 2254 FOR
WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY

---

GROUNDS FOR RELIEF
AND FACTS IN SUPPORT
( ADDITIONAL )

---

A.   Ground one: Ineffective Assistance of Trial Counsel

Supporting Facts:   (a): In July of 2001, the Petitioner/Defendant received the client file of his trial attorney. A note contained within this file has indicated that the Commonwealth had tendered a plea deal for the defendant. The defendant and defendant's appellate counsel had had no previous knowledge of the existence of these notes. The defendant was not advised by trial counsel

-9-

that the Commonwealth had actually offered a plea deal.

(b): The Commonwealth's indictment and official version of the case was that the defendant had killed the victim by means of deliberate premeditation. In brief, a dispute and altercation occurred between the defendant and the victim in the course of a drug sale. The defendant killed the victim with one cut of a sharp instrument, and claims self-defense.

Whether the defendant left the victim's apartment during the dispute and returned from his car moments later, with a knife, to kill the victim, was the critical issue in the case.

The defendant had claimed that the victim had him against a wall and had placed a sharp object to his throat while the victim and the other two occupants/witnesses in the residence were yelling at the defendant to spit out the other bags. The defendant had stated that he had tried to get the victim up off of him by punching at him a few times. The defendant further stated that while the victim had him against the wall with an object to his throat he had reached out for something to hit the victim with.

The defendant claimed that he had reached out and had picked up an object lying next to the television with a VCR in a condition of being repaired, and had hit the victim one time with this object.

-10-

At the defendant's initial interview with trial counsel the day following the death of the victim the defendant had informed counsel of the whereabouts of the weapon and it's presumed evidentiary value in the case.[1/] Trial counsel had adviced and instructed the defendant to deny knowing the whereabouts of the weapon, and I had testified consistent with counsel's advice.

Counsel's advice and instruction to lie about the whereabouts of this weapon had likely deprived the defendant of exculpatory evidence, and consequently therewith, a fair trial.


(c): At the defendant's initial interview with trial counsel the defendant had had lengthy discussions about the defendant's version of facts regarding the altercation which led to the death of the victim and the defendant's own injuries and the supportive evidence. The defendant specifically told counsel and counsel took the photographs which dipict injuries to the defendant's neck consistent with his version of facts. The injury, a small slice on the defendant's neck is dipicted in the photos taken by trial counsel. This injury was also witnessed by several members of the defendant's family and his live-in girlfriend. They were initially told by trial counsel that their testimony would be needed at the defendant's trial.

---

1. The defendant had described this weapon as a "box cutter" or knife with multiple inner-attachments which may contain the fingerprints of the victim or one of the witnesses in the case.

-11-

Counsel never introduced the photographs taken by him that dipict the injury to the defendant's neck. Failure to submit those photographs to corroborate the defendant's testimony at trial was serious error. The Commonwealth had introduced the "booking photo" of the defendant that does not dipict any injury, leaving the defendant, at least in the eyes of the jury, as having lied about having "like a slice" on my neck. Failure to corroborate the injury to the defendant's neck consistent with having a sharp object placed there cannot be viewed as a competent trial tactic.

The Commonwealth relied heavily upon the omission of this corroborative evidence. Going as far as calling him a liar. All the while the defendant's own counsel had taken the necessary evidence. In addition, counsel had told his family and live-in girlfriend that their testimony regarding this injury would be very important in the case. What happened. Counsel did not call any of the defendant's witnesses to corroborate this injury. This error cannot be viewed as a competent trial tactic.

(d): When the defendant's trial counsel had realized the significant importance of the injury to the defendant's neck he was obligated to withdraw as trial counsel and give evidence in the case. He himself was the "best evidence" of the injury to the defendant's neck, and the photographs would have supported his testimony and coroborated the defendant's version of the altercation which led to the victims death by means of

-12-

self-defense. Failure to withdraw and give evidence supportive of the defendant's claim of self-defense cannot be viewed as a competent trial tactic.

(e): Counsel had taken photographs of the injuries to the defendant's hands that were consistent with having tried to get away from the victim by punching him. The victim had sustained an injury consistent with having been punched. Trial counsel did not introduce the photographs of the injury to the defendant's hands. Failure to do so cannot be viewed as competent trial tactic.

(f): The defendant received a slice on his neck. Evidence regarding this slice never reached the jury for their determination on what weight to give it in support of the defendant's claim of self-defense. The Superior Court Judge who decided the defendant's motion for new trial also conceded that the photographs taken by trial counsel do show that there was a slice to the defendant's neck. However, the judge took the position that because it was such a minor wound that it _may have_ inflamed the passions of the jury that the defendant would kill the victim over such a minor injury. It seems that the Judge has missed the point of that evidence. The point is that of the defendant's state of mind. Whether he believed that his life was in danger. A witness who had testified at the trial had stated he heard the defendant state "what are you trying to do stab me

-13-

with a knife." The defendant had a small amount of blood on his shirt collar just below the slice on his neck. The defendant had requested that his trial counsel seek the necessary funds to get this evidence tested. If it turned out to be the defendant's blood, it would have spoke volumes about the injury to the neck of the defendant. Because the defendant and his family had hired the trial counsel in this matter, the trial counsel told the defendant that the Court would not allow any motion for funds because he was not "court appointed".

Failure to have this evidence tested for the presence of the defendant's blood, supportive of the defendant's claim that he had received an injury corroborative of his version of the altercation which led to the death of the victim cannot be viewed a competent trial tactic. Had the Court denied the defendant's request to provide the funds necessary to test this evidence in this regard it would have been strong grounds for reversal.

(g): The one presumed unbiased witness in the case was Lisa Bergeron. In Miss Bergeron's initial statement to the police she had stated that she had observed the defendant leave the building and get into his car and leave the area calmly. However, her trial testimony diverged wildly from this earlier statement. She now stated that she saw the defendant leave the apartment, walk to his car, fumble around inside for a few seconds, take something from the car, put it on the roof of the car, close the car door and walk back to the building. She stated further

that the defendant was in the building for a few minutes, then came out and left the area in a hurry. Trial counsel did try to impeach her with her earlier statement to the police and in addition he called his investigator who also interviewed Miss Bergeron. The investigator testified that Miss Bergeron told him the same information she had initially told the police, and that she did not see anything. When Miss Bergeron was asked about the inconsistency between her initial statement to the police and her trial testimony, she contributed this to the officer having not written "stuff down".

The Commonwealth nor the defendant's trial counsel called the officer who had taken Miss Bergeron's initial statement. Apparently, trial counsel never even talked to this officer at all. The judge hearing the defendant's motion for new trial has taken the position that had counsel called this officer to testify it could have been a double-edged sword.

The jury in this case was left to believe that the officer just did not write this information down. The failure to call this officer cannot be viewed a sound and competent trial tactic. The damage was already done. You lose nothing by calling this officer. To be quite frank, had the officer received this type of information from Miss Bergeron and had not written it down, he would be reduced to a metermaid within the department.

B. Ground two: <u>Inconsistent Instructions Relative To The Commonwealth's Burden of Proof in Proving Manslaughter</u>

<u>Supporting Facts:</u>   Where the evidence raises the possibility

-15-

that the defendant may have acted on reasonable provocation, the Commonwealth must prove, and the jury must find, that the defendant did not act on reasonable provocation. In the present case, the judge gave inconsistent instructions to the jury which could have led them to believe that "malice is negated by provocation only if provocation is proved beyond a reasonable doubt."

The difference between proof beyond a reasonable doubt that a defendant acted with reasonable provocation and proof beyond a reasonable doubt that a defendant did not act with reasonable provocation is substantial.

In the present case, the judge instructed the jury that:

In order to prove someone guilty of the crime of voluntary manslaughter there are three elements that must be proved to you beyond a reasonable doubt. First, that the defendant inflicted an injury upon Mr. Poulin from which he died. Second, that the defendant did so unlawfully, that is, without legal excuse or justification or excuse. Again that would mean without acting in valid self defense. And Finally, that the defendant injured Mr. Poulin as a result of sudden combat or in the heat of passion produced by adequate and reasonable provocation, or by using excessive force in self defense."

The judge then went on to define provocation, and at the end of the charge on manslaughter she stated that the "prosecution must prove that the defendant did not act in such

a heat of passion or sudden reasonable passion. The judge repeated the incorrect language in her summary of the law of manslaughter, by stating:

> So again, in order to prove the defendant guilty of the crime of manslaughter, the Commonwealth must prove beyond a reasonable doubt that the defendant, unlawfully, unjustifiably, that is not acting in self defense,... that he did so without malice. That is, that he did so upon adequate provocation or in the state of anger, fear, passion, excitement or similar emotional state."

In the judge's supplemental instructions given in response to a jury question she told the jury that:

> The crime of voluntary manslaughter is made up of three elements. One, that the defendant inflicted an injury upon the person from which that person died. Second, that he did so unlawfully, that is without justification, without excuse, not acting in self defense. And finally, that the defendant injured the person as a result of some sudden combat or in the heat of passion produced by adequate and reasonable provocation, or he did so by using excessive force to defend himself." For the crime of manslaughter, the Commonwealth must prove that the defendant acted unlawfully, while not acting in valid self defense, unjustifiably, unjustifiably killed another human being. For manslaughter the unlawful killing takes place without malice, that is upon adequate provocation while in a state of the anger, fear, passion, excitement of similar emotional state that would negate, take away the element of malice."

-17-

The instruction was rendered even more confusing when the judge equated excessive force with provocation, telling the jury that it is the Commonwealth's burden to prove that it existed. Saying: If the Commonwealth has proved to you that the defendant used excessive force and that the defendant was not acting in valid self-defense, but the use of excessive force under the circumstances reduces the crime to manslaughter. A person in fear of imminent injury or death who uses excessive force to defend himself, would be acting under a form of provocation, and that would reduce the crime from murder to manslaughter."

Even though the trial judge correctly stated the Commonwealth's burden, the charge, was dominated by burden shifting language. The incorrect portion of the instruction relieved the Commonwealth of its burden to prove that the defendant did not act with reasonable provocation.

C. Ground three: <u>Erroneous Instruction on The Use of Excessive Force Relative to Manslaughter Which Lowered The Commonwealth's Burden of Proof</u>

<u>Supporting Facts:</u> The judge's instruction on excessive force as it relates to manslaughter was erroneous, precluding the jury from finding finding that the defendant feared only physical harm and thus the force he used to defend himself was excessive, circumstances which would reduce murder to manslaughter. Instead, the jury was restricted to considering whether the defendant harbored a fear of imminent injury or death which could justify

-19-

## First Degree Murder By Means of Deliberate Premeditation

**Supporting Facts:**    The defendant was charged with first degree murder by means of deliberate premeditation.  The jury was also instructed on second degree murder and manslaughter.  The judge instructed the jury that the Commonwealth may meet its burden of proving malice by:

evidence that the defendant specifically intended to kill Mr. Poulin or specifically intended to do Mr. Poulin grievous bodily harm or intended to do an act creating a plain and strong likelyhood that Mr. Poulin's death would follow."

This same instruction was repeated numerous times.  The jurors had even requested re-instruction on malice aforethought.  The judge never charged the jury that they must find first prong malice in order to find the defendant guilty of murder in the first degree by means of deliberate premeditation.

In the present case, the judge's charge is confusing in that, immediately after discussing the three prongs of malice, she instructs that if the Commonwealth had proved that the defendant had committed an unlawful killing and that he did so with malice aforethought...then it had proved a case of murder.  Then she goes on to to define murder in the first degree:

The Commonwealth must prove one additional element,..., it must prove beyond a reasonable doubt that the murder was committed with deliberate premeditation.  For the Commonwealth to prove deliberate premeditation, you must conclude that the defendant thought before he acted.  That is that the defendant

-20-

formed a plan to murder after deliberation."

Because the judge incorrectly uses the phrase "plan to murder", the jurors most likely were left with the impression that any one of the prongs of malice satisfied the requirement for murder in the first degree by means of deliberate premeditation. The jury requested two times to be re-instructed on deliberate premeditation. Later on in the charge, the judge does refer to a "killing" instead of a "murder" but does not use clear, strong, and emphatic language.

The judge made no mention of cool reflection and a resolution to kill and again at the end of the charge on deliberate premeditation referred again to a "plan to murder." As discussed previously, the instructions on deliberate premeditation were not so clear and emphatic that the jurors could only have understood that a guilty verdict required a finding of purposeful conduct that included a finding beyond a reasonable doubt of a specific intent to kill.

E.  Ground Five:  <u>Ineffective Assistance Of Counsel (Second motion for a new trial ground)</u>:

<u>Supporting Facts</u>:  Prior to trial the defendant's counsel failed to advise him that the Commonwealth had inquired of him whether the defendant would be interested in pleading guilty to a lesser included offense of second degree murder , which would have given him a sentence containing a

-21-

parole eligibility. Counsel's failure to so inform the defendant resulted in his going to trial and being convicted of first degree murder, which allows no parole eligibility whatsoever.