UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CHRISTOPHER VINTON<br>  Petitioner, | )<br>)<br>)<br>) |
| v. | )<br>) |
| DAVID NOLAN,<br>  Respondent | )<br>)<br>)<br>) |

Civil Action No. 04-10209-DPW

## MEMORANDUM OF THE RESPONDENT
## IN SUPPORT OF THE MOTION TO DISMISS THE
## THE PETITION FOR WRIT OF HABEAS CORPUS

The respondent submits this memorandum in support of his motion to dismiss the petition for writ of habeas corpus filed by Christopher Vinton, "the petitioner", who was convicted in 1997 for first degree murder and sentenced to life imprisonment without parole.  (Petition, p. 2, ¶¶ 1-3).  Vinton raises five grounds for relief: (1) ineffective assistance of trial counsel; (2) inconsistent instructions relative to the Commonwealth's burden of proof in proving manslaughter; (3) erroneous instructions on the use of excessive force relative to manslaughter which lowered the Commonwealth's burden of proof; (4) failure to instruct the jury that they must find first prong malice in order to find the defendant guilty of first degree murder by means of deliberate premeditation; and (5) ineffective assistance of counsel (second motion for new trial ground).  (Petition, pp. 5-6, ¶¶ 12A-12E, and Attachment).

It is the respondent's position that four of the five grounds alleged  - Grounds Two through Five - are in procedural default and a habeas court is foreclosed from reviewing these claims.  Moreover, the petitioner asserts in Ground One that he was denied the effective assistance of trial counsel but he includes as examples of counsel's mistakes factual

2

underpinnings that were either never raised before in any court or were procedurally defaulted when advanced in the petitioner's various motions for a new trial following the affirmance of his conviction. The ineffective assistance of trial counsel claim that was presented to the state's highest court listed three examples of counsel's missteps, i.e., (1) failure to introduce photo of petitioner with nick on his neck; (2) the evidence regarding the nick on the petitioner's neck never reached jury because of failure to have blood evidence tested and (3) failure to call a police officer to impeach a key witness's testimony and ( Supp. Ans. Exh. 1 at 17-32). In his brief, the petitioner also suggested in the course of an argument that trial counsel should have withdrawn from the case and testified as a witness to the neck wound if trial counsel believed that the photographs did not accurately depict the neck wound. Since the SJC considered this suggestion in a footnote in its decision, example four of Ground One may be deemed exhausted. *Vinton*, 432 Mass. at 185 n.7. All other examples of trial counsel's alleged ineffectiveness have never been aired before or were procedurally defaulted.

## **PRIOR PROCEEDINGS** [1]

The petitioner was indicted by a Worcester County grand jury on September 12, 1996 for murder. On May 1, 1997, following a trial before a Massachusetts Superior Court judge, Sosman, J., a jury found the petitioner guilty of first degree murder bas ed upon deliberate premeditation. He was sentenced to life imprisonment at MCI-Cedar Junction.

The petitioner filed a notice of appeal on May 29, 1997 in the Supreme Judicial Court. (SJC). On April 13, 1998, he filed a pro se motion for a new trial. Two months later the

---

[1] The facts in this section are derived from the Commonwealth's Brief to the Massachusetts Supreme Judicial Court. (Supp. Ans. Exh. 2 at 2-3)

3

petitioner filed a supplemental new trial motion through counsel. Following a hearing the trial judge denied the motions on July 2, 1998, and the petitioner filed a notice of appeal on July 15, 1998.

On August 1, 2000, the SJC affirmed the petitioner's conviction and the denial of his motions for a new trial. *Commonwealth v. Vinton*, 432 Mass. 180 (2000)(Supp. Ans. Exh. 3).

One year later, August 6, 2001, the petitioner filed his second motion for a new trial, alleging ineffective assistance of trial counsel for failing to inform him that the Commonwealth tendered a plea deal and failing to produce and submit the knife for testing and advising the petitioner to testify that he did not know where the weapon was. (Supp. Ans. Exh. 4). Following an evidentiary hearing, the motion for a new trial was denied. (Supp. Ans. Exh. 7).

Thereafter, the petitioner filed a Petition for Leave to Appeal Pursuant to G. L. c. 278, § 33E, the Gatekeeper statute, which was denied by the Single Justice, Spina J., on November 20, 2003 (Supp. Ans Exhs. 8, 9, 10).

## STATEMENT OF FACTS

The Supreme Judicial Court summarized the underlying facts of the murder as follows:

> It is undisputed that on August 3, 1996, after receiving a call from Robert Hippert, the [petitioner] went to an apartment to sell him drugs, as he had done on a number of occasions. Hippert, Joseph Jablonski, and the victim, Norman Poulin, were in the apartment that evening. The [petitioner] refused to sell the crack cocaine for less than his asking price of forty dollars, so the victim and the [petitioner] went upstairs to the victim's apartment for the victim to retrieve additional money for the drug purchase. They came back downstairs and an argument ensued, escalating into a physical confrontation in which the victim pinned the [petitioner] against a door or wall. Accounts varied as to what happened next, but no one disputes that the victim died as a result of one stab wound inflicted by the [petitioner]. (FN1.) The [petitioner] claims he acted in self-defense.

4

(FN1.) The medical examiner who conducted an autopsy determined that the cause of death was a single stab wound that penetrated two inches into the left side of the victim's neck, cutting his external carotid artery, an injury consistent with a knife wound.

Jablonski testified that, when the [petitioner] and the victim came back downstairs, the victim asked Jablonski to come outside with them, they went to the hallway or front door, and the victim pushed the [petitioner] against the outside hallway door. The victim said to Jablonski, "This guy won't give me my money back," complaining that the amount of crack cocaine was too small for forty dollars. Jablonski testified that the victim had his left forearm under the [petitioner] 's chin and had keys in his hand that might have had a pen on it. He heard the [petitioner] say, "What are you trying to do, stick me with a knife?", but testified that the [petitioner] did not seem afraid when he said this. To his knowledge, the victim did not try to rob the [petitioner] of any cocaine. According to Jablonski, after a few seconds, the victim let the [petitioner] go. Jablonski and the victim returned to the apartment. About one minute later the [petitioner] knocked on the door, walked up to the victim, swung his arm once at the victim, and stabbed him. Jablonski testified that the victim said, "What did you do? Stab me in the neck?" The [petitioner] responded, "I didn't stab you with anything." The victim started bleeding and Jablonski wrapped a towel around his neck. Hippert's testimony was similar, although he added that the victim may have also slapped the [petitioner] a bit in the initial altercation and stated that the [petitioner] returned to the apartment about five minutes later.

Lisa Bergeron, who was in one of the third-floor apartments in the building that night, offered the following testimony. She knew the [petitioner] by face, having seen him three or four times a day for about two months, and knew his car. That night she saw the [petitioner] go to his car out front, fumble around inside for about thirty seconds, put something on the roof of the car, shut the door, and then get the object from the roof. The [petitioner] went back into the building for four or five minutes and then walked quickly back out to his car.

In contrast to those three witnesses, the [petitioner] offered the following testimony.

5

> While upstairs with the victim, he felt that something did not seem right; he went back downstairs and told Hippert he had to leave. Hippert tried to talk him into selling the drugs for less money. As the [petitioner] started to leave, the victim grabbed him, pushed him against the wall, pressed something metal against his throat and told him that if he did not give them the drugs he would cut the [petitioner]. After further struggle, the [petitioner] spit out the drugs he was holding in his mouth, but the victim continued to press "his knife into my throat," and the [petitioner] received "like a slice" on his throat. The [petitioner], thinking that the victim "was going to kill [him]," grabbed a knife that was on top of the television and swung it at the victim, then left the house and went to his sister's house. When he got out of his car at his sister's house, he dropped the knife, and testified that he did not know exactly where he dropped it.

*Commonwealth v. Vinton* 432 Mass. at 181-183. (Supp. Ans. Exh. 3).

## ARGUMENT

**I. THE PETITIONER HAS FAILED TO EXHAUST STATE REMEDIES ON GROUND ONE BECAUSE HE HAD ADDED A NEW CLAIM ALLEGEDLY INDICATING HIS ATTORNEY'S INEFFECTIVENESS THAT WAS NOT PRESENTED TO THE STATE COURTS.**

It is well established that "a federal court should not consider questions posed in a habeas petition until the 'power of the highest state court in respect to such questions' has been exhausted." *Mele v. Fitchburg District Court*, 850 F.2d 817, 819 (1st Cir. 1988), *quoting United States ex rel. Kennedy v. Tyler*, 269 U. S. 13, 17 (1925). *See Baldwin v. Reese, 124 S. Ct. 1347 (2002); Rose v. Lundy*, 455 U. S. 509, 518-519 (1982); *Picard v. Connor*, 404 U. S. 270, 276 (1971); *Dougan v. Ponte*, 727 F.2d 199, 202 (1st Cir. 1984); 28 U.S.C. § 2254(b)(1)(A). The exhaustion principle, in addition to ensuring that state courts have the first opportunity to correct their own constitutional errors made in their proceedings, enables federal courts to accord appropriate respect to the sovereignty of the states and promotes comity by "minimiz[ing] friction between our federal and state systems of justice." *Rose v. Lundy*, 455 U. S. at 518. *See*

6

*Duncan v. Henry*, 513 U. S. 364, 365-366 (1995); *Scarpa v. DuBois*, 38 F.3d 1, 6 (1st Cir. 1994),

*cert. denied*, 513 U. S. 1129 (1995); *Duckworth v. Serrano*, 454 U. S. 1, 3 (1984); *Mele v.*

*Fitchburg District Court*, 850 F.2d at 819.  *See also Ex parte Royall*, 117 U. S. 241, 251 (1886)

(state and federal courts are "equally bound to guard and protect rights secured by the

Constitution").

        A claim in state court may include an inkling of a federal claim, but not one "likely to

alert the court to the claim's federal nature." *Nadworny v. Fair*, 872 F.2d 1093, 1098 (1st Cir.

1989), *quoting Daye v. Attorney General of New York*, 696 F.2d 186, 192 (2d Cir. 1982) (en

banc), *cert. denied*, 464 U. S. 1048 (1984).  *See Scarpa v. DuBois*, 38 F.3d at 6.  It is not enough

that all the facts necessary to support the federal claim were before the state court, or that a

somewhat similar state-law claim was made. *Anderson v. Harless*, 459 U. S. 4, 6 (1982); *Picard*

*v. Connor*, 404 U. S. at 276-277.  *See Duncan v. Henry*, 513 U. S. at 366.  Rather, "the

exhaustion requirement requires a habeas applicant to do more than scatter some makeshift

needles in the haystack of the state court record.  The ground relied upon must be presented

face-up and squarely; the federal question must be plainly defined.  Oblique references [that]

hint that a [federal] theory may be lurking in the woodwork will not turn the exhaustion trick."

*Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988).  *See Baldwin v Reese*, 124 S. Ct. at

1349-50 (petitioner failed to alert state court to the federal nature of ineffective of appellate

counsel claim).  This means that the petitioner must have submitted both the predicate facts and

the federal legal theories to the state's highest court.  *Gagne*, 835 F.2d at 7; *Mele*, 850 F.2d at

819-20.

7

Moreover, *every* claim must have been exhausted. *Rose,* 455 U.S. at 522; *O'Sullivan,*

526 U.S. at 848. If a petition is "mixed" – that is, contains both exhausted and unexhausted

claims – it must be dismissed.[2]  *Rose,* 455 U.S. at 522; *Adelson,* 131 F.3d at 261-62; *Martens v.*

*Shannon,* 836 F.2d 715, 717-18 (1st Cir. 1988). In order for it to be said that the petitioner has

exhausted his state remedies as to his federal habeas claims, he must have presented the state

court with:

> specific constitutional language, constitutional citation, appropriate federal precedent,
> substantive constitutional analogy, argument with no masking state-law character, . . .
> such as would in all likelihood alert a reasonable jurist to the existence of the federal
> question.

*Nadworny v. Fair,* 872 F.2d at 1101. It is the petitioner's heavy burden to demonstrate that his

now claimed federal errors were fairly presented to the state's highest court. *Nadworny v. Fair,*

872 F.2d. at 1098.

Failure to exhaust state remedies is a fundamental defect fatal to a habeas corpus petition.

"[F]ederal habeas oversight is not a freewheeling construct. It is dependent, among other things,

upon all of the claims asserted in the petition having been exhausted in the state courts."

*Martens v. Shannon,* 836 F.2d at 717. "It would be unseemly in our dual system of government

---

[2]  Prior to enactment of the Antiterrorism and Effective Death Penalty Act of 1996
("AEDPA"), failure to exhaust all claims in state court required dismissal of the entire petition.
Under AEDPA, a court confronted with unexhausted claims may, in its discretion, either dismiss
the entire petition as unexhausted or deny (but not grant) the petition on the merits. See 28
U.S.C. § 2254(b)(1)-(2) ("[a]n application for a writ of habeas corpus may be *denied* on the
merits, notwithstanding the failure of the applicant to exhaust the remedies available in the
courts of the State") (emphasis added). Moreover, the Court may not dismiss the unexhausted
claims and proceed to the merits of the exhausted claims. *See, e.g., O'Sullivan,* 526 U.S. at 842-
48 (reviewing exhaustion requirements under AEDPA and concluding that petitioner must
properly exhaust his state-court remedies with respect to all claims in the habeas writ; affirming
dismissal of petition containing unexhausted claims).

8

for a federal district court to upset a state court conviction without an opportunity to state courts

to correct a constitutional violation." *Picard v. Connor*, 404 U. S. at 275, *quoting Darr v.*

*Burford*, 339 U. S. 200, 204 (1950).

In Ground One, the petitioner claims that he was denied the effective assistance of trial

counsel because his attorney committed the following seven errors:

> 1. failed to advise him of a plea deal (Petition Attachment at 8-9)
>
> 2. advised him to lie about the whereabouts of the murder weapon ((Petition Attachment at 9-10)
>
> 3. failed to introduce the photograph of the petitioner with a nick on his neck (Petition Attachment at 10-11)
>
> 4. failed to withdraw as trial counsel and give evidence as a witness (Petition Attachment at 11-12)
>
> 5. failed to introduce photographs of the injury to the petitioner's hands (Petition Attachment at 12)
>
> 6. failed to have evidence tested for the presence of petitioner's blood (Petition Attachment at 13)
>
> 7. failed to call police officer to impeach witness's testimony (Petition Attachment at 14)

Of the seven grounds listed above, number five was never raised before in any

proceeding whatsoever and is clearly unexhausted. (See Supp. Ans.) Since the petitioner has

failed to submit both the predicate facts and the federal legal theories to the state's highest court,

the petitioner's ineffective claim is not fully exhausted. *Gagne*, 835 F.2d at 7; *Mele*, 850 F.2d at

819-20.

One and two above were included in the petitioner's post-appeal motions for a new trial

as examples of counsel's ineffectiveness but were deemed waived because they were not raised

in the petitioner's direct appeal.   The Single Justice refused the petitioner's application to appeal the motions for a new trial.  Any claim based on these procedurally defaulted grounds are not cognizable on habeas review  *See infra.*

Finally,  three, four, six and seven above were cited by the petitioner in his state appeal as indicating trial counsel's ineffectiveness. The state court adjudication on these claims was not contrary to nor an unreasonable application of clearly established Supreme Court law.  *See infra.*

## II.    GROUNDS TWO, THREE AND FOUR ARE PROCEDURALLY DEFAULTED BECAUSE NO OBJECTION TO THE JURY CHARGE WAS MADE AT TRIAL AND THE SUPREME JUDICIAL COURT REVIEWED THE ALLEGED ERRORS ONLY TO DETERMINE WHETHER THERE WAS A SUBSTANTIAL RISK OF A MISCARRIAGE OF JUSTICE.

"The habeas corpus anodyne is designed neither to provide an additional layer of conventional appellate review nor to correct garden-variety errors, whether of fact or law, that may stain the record of a state criminal trial.  Rather, the remedy is limited to the consideration of federal constitutional claims." *Burks v. DuBois*, 55 F.3d 712, 715 (1st Cir. 1995).  *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) (affirming that the purpose of federal habeas corpus review is to ensure that individuals are not imprisoned in violation of the Constitution). *See also Barefoot v. Estelle*, 463 U.S. 880, 887 (1983) ("Federal courts are not forums in which to relitigate state trials").  Thus, federal habeas review is precluded, as a general proposition, when a state court has reached its decision on the basis of an adequate and independent state-law ground. *See Coleman v. Thompson*, 501 U.S. 722 (1991).  In *Coleman*, the Supreme Court held that where

> a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate

10

> that failure to consider the claims will result in a fundamental miscarriage of justice.

*Id*. at 750. *See Gunter v. Maloney*, 291 F.3d 74, 78 (1st Cir. 2002). A petitioner's procedural default constitutes an adequate and independent state ground so long as the state consistently applies the rule and has not waived it. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Burks v. DuBois*, 55 F.3d at 716; *Puleio v. Vose*, 830 F.2d 1197, 1199 (1st Cir. 1987), *cert. denied*, 485 U.S. 990 (1988).

Grounds Two, Three and Four relative to the judge's instructions were raised in the petitioner's direct appeal but the SJC noted that defense counsel never objected at trial to the instructions attacked on appeal and review the alleged errors to determine if they created a substantial likelihood that a miscarriage of justice had occurred. *Vinton*, 432 Mass. at 188. In order to preserve a claim for full review in Massachusetts, a petitioner is obligated to bring the alleged error to the attention of the judge. *Commonwealth v. Cruz*, 430 Mass. 182, 183-184, 714 N.E.2d 813, 816 (1999). *See* Mass. R. Crim. P. 22 (the contemporaneous objection rule); Mass. R. Crim. P. 24(b) ("no party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict). The SJC, after review of each instruction, concluded that the instructions did not create a substantial risk of a miscarriage of justice. Vinton, 432 Mass. at 188-193. ( Supp. Ans. Exh. 3) This determination constitutes an "adequate and independent state law ground" within the meaning of the procedural default rule, thereby precluding habeas review. *See Brewer v. Marshall*, 119 F.3d 993, 999 (1st Cir. 1997), *cert. denied,* 522 U.S. 1151 (1998).

The "procedural default rule" reflects the Supreme Court's view that, in the interests of comity and federalism, a habeas court should "'not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Boutwell v. Bissonnette*, 66 F. Supp.2d

11

243, 245 (D. Mass. 1999), *quoting Coleman v. Thomspon*, 501 U.S. 722, 729 (1991). Such

independent and adequate state grounds exist where, as here, "'the state court declined to hear

[the federal claims] because the prisoner failed to meet a state procedural requirement.'"

*Simpson v. Matesanz*, 175 F.3d 200, 206 (1st Cir. 1999), *quoting Brewer*, 119 F.3d at 999), *cert.*

*denied,* 528 U.S. 1082 (2000).

Massachusetts has a "long-standing rule that issues not raised at trial . . . are treated as

waived. . . ." *Commonwealth v. Curtis*, 632 N.E.2d 821, 827 (Mass. 1994). This rule,

commonly known as the "contemporaneous objection rule," is codified in Mass. R. Crim. P. 22

and Mass. R. Crim. P. 24, which requires that an objection be made at the time of the challenged

instruction or action. *Brewer,* 119 F.3d at 1002 (discussing Mass. R. Crim. P. 22); *Tart v.*

*Massachusetts*, 949 F.2d 490, 496 (1st Cir. 1991) (discussing Mass. R. Crim. P. 24(b)). The

First Circuit Court of Appeals has repeatedly recognized that "Massachusetts has [] routinely

enforced, [and] consistently applied [the] contemporaneous objection rule." *Burks v. Dubois*, 55

F.3d 712, 716 (1st Cir. 1995) (collecting cases); *see also Brewer*, 119 F.3d at 1001 (describing

Massachusetts' contemporaneous objection rule as "firmly entrenched"). Where, as here, no

objections are raised at trial, appellate review under Massachusetts law is limited to determining

whether the alleged errors posed a risk of a miscarriage of justice. *See Burks*, 55 F.3d at 716,

n.2; *Commonwealth v. Harrington*, 399 N.E.2d 475, 478 (Mass. 1980).

The limited review undertaken pursuant to the Massachusetts "miscarriage of justice"

standard does not operate as a waiver of the underlying procedural default. *Burks*, 55 F.3d at

716, n. 2. To the contrary, such review constitutes the "classic example of an independent and

adequate state ground" supporting application of the procedural default rule. *Simpson,* 175 F.3d

at 207. Habeas review, therefore, is precluded unless petitioner "can demonstrate cause for

default and prejudice stemming therefrom, or, alternatively, unless he can show that a refusal to

consider the merits of the constitutional claim will work a miscarriage of justice." *Burks*, 55

12

F.3d at 716. *See infra.*

## III. GROUND FIVE AS WELL AS SUBPARTS OF THE PETITIONER'S INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL CLAIM ARE PROCEDURALLY DEFAULTED BECAUSE THE ISSUES WERE RAISED IN THE SECOND MOTION FOR A NEW TRIAL AND THE SINGLE JUSTICE DECLINED TO ALLOW AN APPEAL FROM THE DENIAL OF THAT MOTION.

Regarding Ground Five, the petitioner claimed in his second new trial motion that he was denied the effective assistance of trial counsel, specifically faulting his attorney for the alleged failure to inform the petitioner of a plea deal.[3] The trial judge found the claim to be waived and denied the motion. (Supp. Ans. Exh. 7). Thereafter, the petitioner applied under G.L. c. 278, §33E for leave to appeal the denial of his second motion for new trial. The gatekeeper denied leave to appeal because the petitioner had failed to present a new and substantial issue. (Supp. Ans. Exh. 10).

The very nature of the independent and adequate state ground inquiry, *i.e.*, one borne out of comity and federalism concerns, requires that it be addressed by the district court at the outset. *See Lambrix v. Singletary*, 520 U.S. 518, 524 (1997) (procedural default question should be addressed before *Tegaue* bar, which is addressed before the merits). As the Court held in *Lambrix*, "[a] State's procedural rules are of vital importance to the orderly administration of its criminal courts; when a federal court permits them to be readily evaded, it undermines the criminal justice system." *Id.* at 525.

---

[3] Trial counsel denied that the Commonwealth offered a plea deal and testified at an evidentiary hearing on the second motion for a new trial that if the prosecutor had done so he absolutely would have communicated such a message to his client. (Supp. Ans. Exh. 7 at 3-6). The motion judge credited defense counsel's testimony. *Id.* at 6.

13

As a matter of Massachusetts appellate procedural law, there exist special provisions for those indicted for, and convicted of, first degree murder. Under G.L. c. 278, §33E, such a "capital" defendant has a right of direct appeal to the SJC, without the case being first entered on the docket of the Appeals Court. *See Dickerson v. Latessa*, 872 F.2d 1116, 1117-1118 (1st Cir. 1989). The scope of the SJC's review is exceedingly broad under §33E: it reviews the "whole case" to determine whether the verdict is against the weight of the evidence, and the court is empowered to order a new trial or to reduce the verdict to a lesser degree of guilt if the interests of justice so require. *See Dickerson v. Latessa*, 872 F.2d at 1118; *Trigones v. Attorney General*, 420 Mass. 859, 863, 652 N.E.2d 893, 895 (1995); 32 Nolan & Sarorio, MASSACHUSETTS PRACTICE SERIES, *Criminal Law*, §189 (3d ed. 2001).

After this plenary review on direct appeal, a capital defendant may not appeal the decision of the Superior Court denying a post appeal motion for a new trial unless the "gatekeeper," *i.e.*, a single justice of the Supreme Judicial Court for Suffolk County, finds that the appeal presents a "new" and "substantial" question which ought to be determined by the full court. *Dickerson v. Latessa*, 872 F.2d at 1118. The gatekeeper's denial of a defendant's petition for leave to appeal is final and unreviewable. *Commonwealth v. Ambers*, 397 Mass. 705, 710-711, 493 N.E.2d 837, 841 (1986). *See McLaughlin v. Gabriel*, 726 F.2d 7, 9 (1st Cir. 1984). The gatekeeper only reviews the defendant's claim to determine whether it meets the conjunctive procedural requirement that it be both "new and substantial." *Leaster v. Commonwealth*, 385 Mass. 547, 549-550, 432 N.E.2d 708, 709-710 (1982). *See Dickerson v. Latessa*, 872 F.2d at 1118; *McLaughlin v. Gabriel*, 726 F.2d at 9.

14

The decision of the gatekeeper in this case was a procedural default. In fact, the First Circuit has held that the denial of the §33E gatekeeper petition is a "classic example of an independent and adequate state ground." *Simpson v. Matesanz*, 175 F.3d at 207 (citations omitted). *See Moore v. Ponte*, 186 F.3d 26, 32 (1st. Cir. 1999) (denial of gatekeeper petition functions as a procedural default). This is not a case where the gatekeeper bypassed the question of whether the issue was "new," and instead found that it was not "substantial," *see Phoenix v. Matesanz*, 189 F.3d 20, 25-27 (1st Cir. 1999), but rather, this is a case where the gatekeeper determined that neither part of §33E's conjunctive procedural requirement could be met.

## IV.  THE PETITIONER MAY CANNOT PROVE CAUSE AND PREJUDICE OR ACTUAL INNOCENCE TO EXCUSE THE PROCEDURAL DEFAULT

Habeas review is precluded on Grounds Two through Five and the cited subparts of Ground One unless the petitioner "can demonstrate cause for default and prejudice stemming therefrom, or, alternatively, unless [he] can show that a refusal to consider the merits of the constitutional claim will work a miscarriage of justice." *Burks*, 55 F.3d at 716. Faced by a state-court judgment that rests upon an adequate and independent state ground, a habeas petitioner has the burden of proving both cause and prejudice. To excuse a procedural default, a petitioner's "cause" must relate to an objective factor, external to the defense, that thwarted (or at least substantially obstructed) the efforts of the defendant or his counsel to obey the state's procedural rule." *Burks*, 55 F.3d at 716-17. No such factor "external" to the defense existed here. There was, for instance, no governmental interference that prevented the petitioner from complying with the state procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).

The only other potential cause available to petitioners is alleged attorney error or oversight in failing to timely object to the judge's instructions at trial or raise the ineffective assistance of

15

counsel claim in his first motion for a new trial.    It is well-settled, however, that attorney error

or oversight is not sufficient cause for excusing a procedural default unless it rises to the level of

constitutional ineffective assistance.  *See id.; Burks*, 55 F.3d 712.  No such showing could be

made here since counsel's perceived error in failing to object or raise the specific ineffectiveness

claim issue in the first motion for new trial.  *See Strickland v. Washington*, 466 U.S. 668, 687

(1984) (to constitute ineffective assistance, counsel's deficient performance must have

prejudiced the defendant's right to a fair trial by rendering the outcome of trial unreliable or

fundamentally unfair).

Even assuming that sufficient cause were demonstrated, petitioner cannot demonstrate

prejudice flowing from the loss of his procedurally defaulted claims.  *See Gardner v. Ponte*, 817

F.2d 183, 187 (1st Cir.) (to avoid procedural bar, petitioner must demonstrate both cause for his

default and actual prejudice resulting therefrom), *cert. denied*, 484 U.S. 863 (1987).  The SJC

has expressly determined that none of the alleged jury instructional errors posed any risk of a

miscarriage of justice. *Vinton*, 432 Mass. 188-192.  Moreover, the Single Justice found that the

issue of the alleged plea deal was not only waived but totally unsupported by any evidence and

testimony presented at the evidentiary hearing on the second motion for a new trial.  (Supp. Ans.

Exh. 7 at 2).

## V.    THE STATE COURT ADJUDICATION OF THE PETITIONER'S EXHAUSTED INEFFECTIVENESS OF COUNSEL CLAIMS WAS NOT CONTRARY TO NOR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED SUPREME COURT LAW.

In Ground One, the petitioner asserts that he was denied the effective assistance of trial

counsel because his attorney (1) failed to introduce the photograph of the petitioner with a nick

on his neck; (2) failed to have evidence tested for the presence of petitioner's blood and (3)

16

failed to call police officer to impeach witness's testimony. (Petition Attachment at 10-14). He also includes in example four that his counsel was ineffective withdrawing and becoming a witness. *Vinton*, 432 Mass. at 183 n.1.

## A. STANDARD OF REVIEW

Because the instant petition for writ of habeas corpus was filed after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA), a habeas court's review of his claims is governed by that statute. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The relevant statutory provision, 28 U.S.C. § 2254(d)(1), states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;

In *Williams v. Taylor*, 529 U.S. 362, 412 (2000) (O'Connor, J., Opinion of the Court) the Supreme Court gave independent meaning to both the "contrary to" and the "unreasonable application" clauses of the statute. *See id*. at 405. Under the first prong of § 2254(d)(1), the Court stated that a decision may be "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), in two ways. First, "[a] state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases." *Williams*, 529 U.S. at 405. Second, "[a] state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from