17

our precedent." *Id.* at 405-406.[4]

Under the second prong of § 2254(d)(1), "[a] state-court decision that correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case" qualifies as "'an unreasonable application of . . . clearly established Federal law.'" *Id.* at 407 (quoting 2254(d)(1)). In determining whether a state-court decision unreasonably applies Supreme Court precedent, "a federal habeas court should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. As the Court stressed, "the most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). Under the "unreasonable application" clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable. *Id.* at 411. The First Circuit recently explained the degree of error that must be shown by the petitioner to reach the level of an "objectively unreasonable" state court decision. "[S]ome increment of incorrectness beyond error is required....The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." *McCambridge v. Hall,* 303 F.3d 24, 36 (1st Cir. 2002) (quoting *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir. 2000)).

---

[4] The court interpreted the phrase "clearly established Federal law, as determined by the Supreme Court of the United States," a phrase shared by both clauses, to "refer[] to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. The statute thus "restricts the source of clearly established law" to the Supreme Court's holdings. *Id.*

## B. STATE COURT ADJUDICATION

In his appeal to the Supreme Judicial Court, the petitioner asserted that he was denied his constitutional right to effective assistance of counsel because his trial counsel (1) failed to present credible corroborative evidence to support his claim of self-defense (2) failed to have his blood-stained shirt tested and (3) failed "adequately" to impeach a key witness, Lisa Bergeron. *Vinton*, 432 Mass. at 183. The SJC rejected the allegation of ineffectiveness, essentially because the photograph and blood stained shirt had little bearing on the critical issue in the case of whether the petitioner left the apartment, went to his car and returned to the apartment before stabbing the victim. *Vinton*, 432 Mass. at 184. The court also found that the witness, Ms. Bergeron, had been impeached on cross-examination. *Id.* at 187.

### Failure to Produce Corroborative Evidence of Slice to Petitioner's Neck

The [petitioner] asserts that his trial counsel should have presented corroborative evidence to support the self-defense claim, particularly concerning his testimony that he received "like a slice" from a metal object the victim held against his neck, because the case turned on the credibility of the [petitioner]. He asserts that trial counsel's decision not to introduce photographs of the [petitioner]'s neck taken by counsel the day after the victim was killed was manifestly unreasonable, as was the decision not to call any of the seven witnesses who were ready to testify about the injury to the [petitioner]'s neck.

There is no question that in closing argument the prosecution repeatedly focused on the [petitioner]'s claim that his neck was injured by the victim, asserting that the claim was a "bold-faced lie," and that this lie revealed the [petitioner]'s lack of credibility concerning the events in the apartment on the night of the stabbing. But defense counsel's own closing argument effectively anticipated and largely preempted the prosecution's closing argument on this point. Moreover, we agree with the judge that the critical question in this trial was whether the [petitioner] had an opportunity to escape and avoid combat. The difficulty for the [petitioner] here is that his credibility concerning whether the victim cut the [petitioner]'s neck had little direct bearing on this central issue, whether the [petitioner] left the apartment, went to his car, and then returned to the apartment before stabbing the victim. Even assuming that the failure to put forward the desired corroborative evidence weakened the credibility of the [petitioner] generally--an assumption we are not convinced is sound--in the face of testimony from three witnesses that the [petitioner] left and then returned before the stabbing, the failure by counsel to put forward this evidence is unlikely

19

to have influenced the verdict. Consequently, it could not have created a substantial likelihood of a miscarriage of justice, particularly given Bergeron's testimony. In addition to this general problem with the [petitioner]'s argument, there are specific problems concerning the particular "corroborative" evidence the [petitioner] argues should have been put forward, as we now examine.

**Additional photographs.** The [petitioner] argues that his counsel's decision not to present additional photographs taken by defense counsel of the [petitioner]'s neck just before the booking photographs was manifestly unreasonable. As the motion judge correctly observed, however, the photographs were a "double-edged sword" with the "potential to backfire on the [petitioner]," perhaps outraging the jury that a fatal stabbing would be committed "over an injury this minor." It could have been risky to introduce the additional photographs because they showed, as appellate defense counsel characterized it, "a pressure point and a scratch," which the jury could have found was not "like a slice." According to an affidavit of the [petitioner], his trial counsel stated that the cut "[l]ooked like a cat scratch" in the photographs. The photographs, consequently, could have undermined the [petitioner]'s credibility more than they helped him. Trial counsel's tactical decision not to submit the photographs as evidence was not manifestly unreasonable.

**Witnesses.** The [petitioner] faults his counsel for not calling any of several witnesses who could have testified that they saw an injury to his neck. The jury, however, did have before it evidence that the [petitioner] could have received a cut to his neck: the blood on the [petitioner]'s shirt collar; Jablonski's testimony that the [petitioner] said, "What are you trying to do, stick me with a knife?," as the victim had keys in his hand; as well as the [petitioner]'s own testimony that his neck was cut by the victim. Given the prosecution's focus in closing argument on the [petitioner]'s lack of a neck injury, it is arguable that it might have been better for counsel to have called witnesses to support the evidence that the [petitioner] had received a cut or scratch. Counsel's decision not to do so was not manifestly unreasonable. See *Commonwealth v. Drumgold*, 423 Mass. 230, 262, 668 N.E.2d 300 (1996) (assessment of defense strategy is not to be made using advantage of hindsight). In any event, the witnesses' testimony would not have directly aided the [petitioner] regarding the central issue whether the [petitioner] left the building before the stabbing occurred. See *Commonwealth v. Sarmanian*, 426 Mass. 405, 407-408, 688 N.E.2d 973 (1998) (no error where counsel did not call additional witnesses but evidence from them would have been cumulative, not dispositive).

**B.    Testing blood stains.** The [petitioner] states that his trial counsel should have sought court-ordered funds to test the blood on the front collar of his shirt, as the [petitioner] had requested, because proof that the blood was his own would have bolstered his claim that the victim injured his neck. But the [petitioner] concedes that the jury had before them the evidence of blood on the [petitioner]'s collar, and the Commonwealth did not argue that the blood was the victim's. Identifying the source of this blood, moreover, would not have helped resolve the central issue on which the [petitioner]'s conviction

hinged. His attorney's decision not to request funds for the test was not manifestly unreasonable. Cf. *Commonwealth v. Conley*, 43 Mass.App.Ct. 385, 395, 683 N.E.2d 687 (1997) (counsel's failure to file motion for blood test of knife manifestly unreasonable where presence of [petitioner]'s blood on knife would seriously weaken if not destroy credibility of alleged victims).

**C. Impeachment of Bergeron.** The [petitioner] faults his trial counsel's failure to call the officer who made the report concerning Bergeron's initial statements to the police. In that report Bergeron stated that she "saw this guy leaving the building. He was walking real calm." the report makes no mention of Bergeron's saying When asked if there was "anything else that you can think of that would be of help," that she saw the [petitioner] go out to his car and then return to the building. At trial, however, Bergeron testified that she saw the [petitioner] go to his car, get something, return to the building, and come back out four or five minutes later. She testified that the [petitioner] "walk[ed] quickly" to his car and left, spinning and screeching his tires as he did so. The prosecution, in closing, identified Bergeron's testimony on this point as a "piece of critical evidence," and argued that this "going out to the car" prior to returning to the building was "when the real premeditation takes place."

Both Jablonski and Hippert testified that the [petitioner] left after the initial altercation with the victim and then returned to commit the stabbing. But as friends of the victim, with criminal records, who had been drinking that day and were possible participants in the drug deal that led to the altercation, their credibility was not as unassailable as Bergeron's. Impeachment of Bergeron was therefore indisputably important to the defense.

Bergeron was impeached by the defense, in a cross-examination that highlighted the inconsistency between her earlier statement to the police and her testimony. In addition, the defense called a private investigator to the stand who testified that he interviewed Bergeron by telephone six days after the stabbing and she did not mention that she saw the [petitioner] leave the house twice. Calling the officer who made the report might have added little to the defense and could have been risky. As the judge observed, it was unclear what the officer would say and whether his testimony would help or harm the [petitioner]. The defense itself recognizes that the officer's testimony "may ... have undermined" Bergeron's credibility. (Emphasis added.) Trial counsel's failure to summon the officer to the stand did not constitute ineffectiveness. Cf. *Commonwealth v. White*, 409 Mass. 266, 273-277, 565 N.E.2d 1185 (1991) (not ineffective to fail to call witnesses where any benefit from their testimony would have been largely offset by its harm).[5]

---

[5] "The [petitioner] also argues that trial counsel initially thought the [petitioner]'s neck injury was significant enough to photograph and that, if he believed that the photographs did not depict accurately what he himself had observed and did not intend to call others as witnesses who had seen the injury, he should have withdrawn as trial counsel and testified as to his observations. The [petitioner] points to no evidence that the attorney believed that the

21

*Vinton*, 432 Mass. at 183-188.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court established that a violation of the right to effective assistance of counsel has two components.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Under the performance prong of *Strickland*, a party claiming ineffective assistance must prove that counsel's performance fell below an "objective standard of reasonableness." *Id.* at 687-88. There is a "strong presumption" that counsel's strategy and tactics fall "within the range of reasonable professional assistance," and courts should avoid second-guessing counsel's performance with the use of hindsight. *Id.* at 689. As the Supreme Court has explained, "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction. . . , and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689; *see also Phoenix v. Matesanz*, 233 F.3d 77, 81 (1st Cir. 2000) (discussing the "deferential standard" of review and the "strong presumption" of effectiveness under *Strickland*). The mere fact that

---

photographs did not depict the injury accurately. Moreover, counsel had numerous choices for alternative witnesses who saw the [petitioner] when he did and who could have testified concerning the injury or the accuracy of the photographs. The [petitioner] has not shown there was a need for counsel to testify. *Cf. Commonwealth v. Rondeau*, 378 Mass. 408, 413, 416-417, 392 N.E.2d 1001 (1979) (ineffective assistance of counsel where counsel did not withdraw when need for testimony was apparent; counsel was only alibi witness who could not be impeached by evidence of criminal record)." *Vinton*, 432 Mass. at 185 n.7.

counsel chose a stratagem that "'may, in retrospect, have proved unsuccessful, or even unwise,'" does not render counsel's assistance ineffective in the constitutional sense. *Phoenix*, 233 F.3d at 81 (quoting *United States v. Natanel*, 938 F.2d 302, 310 (1st Cir. 1991), *cert. denied*, 502 U.S. 1079 (1992)). Instead, it is well established that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" because such decisions are presumptively within the "wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. It is only where, given the facts then existing, counsel's "choice was so patently unreasonable that no competent attorney would have made it," that the ineffective assistance prong of *Strickland* may be satisfied. *Phoenix*, 233 F.3d at 82, n.2.

Under the prejudice prong of *Strickland*, a party claiming ineffective assistance must show "that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. Not all errors by counsel are sufficient to satisfy this standard. *Id.* at 693. Rather, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The Supreme Court has described this as a "highly demanding" and "heavy burden." *See Williams*, 529 U.S. at 393.

In rejecting the petitioner's ineffective assistance claim, the SJC relied on its decision in *Commonwealth v. Wright*, 411 Mass. 678, 682, 584 N.E.2d 621, 624 (1992). In *Wright*, the SJC held that the standard of review applicable to first-degree murder convictions under G.L. c. 278, § 33E is "more favorable to the defendant than is the constitutional standard" established by the Supreme Court in *Strickland* and the SJC in *Commonwealth v. Safarian*, 366 Mass. 89, 315

23

N.E.2d 878 (1974).[6] *Wright*, 411 Mass. at 682. Under this 'broader standard of review," *Commonwealth v. Duran*, 435 Mass. 97, 102, 755 N.E.2d 260, 265 (2001), the focus of the SJC's "review is not solely the adequacy of trial counsel's representation, but also 'whether there was an error . . . (by defense counsel, the prosecutor, or the judge) and, if there was, whether that error was likely to have influenced the jury's conclusion.'" *Commonwealth v. Britto*, 433 Mass. 596, 602, 744 N.E.2d 1089, 1098 (2001) (internal citations omitted). Since the SJC applied a standard of review even more favorable to the petitioner's claims than required by clearly established Supreme Court precedent, it cannot be said that the SJC's decision was "contrary to" such precedent. *See Williams*, 529 U.S. at 405-06 (to satisfy the "contrary to" clause, the state-court decision must be "substantially different," "diametrically different," "opposite in character or nature," or "mutually opposed" to clearly established Supreme Court precedent). This was precisely the conclusion reached by the First Circuit in its recent decision in *Mello v. DiPaulo*, 295 F. 3d 137, 144 (1st Cir. 2002)(the *Wright* standard is "at least as favorable" to defendants as the *Strickland* standard).

The SJC's decision was not an unreasonable application of *Strickland*. The court found that admission of the photograph and additional evidence that the victim allegedly nicked the petitioner's neck was unlikely to have influenced the ultimate verdict. The court pointed out that the petitioner's conviction hinged on one critical fact, i.e., "whether the [petitioner] had an

---

[6] The First Circuit has recognized that the standard for ineffective assistance under Massachusetts law is "functionally equivalent to the federal standard." *Stephens v. Hall*, 294 F. 3d 210, 214 (1st Cir. 2002) (quoting *Phoenix v. Matesanz*, 189 F.3d 20, 27 n.4 (1st Cir. 1999)) and citing, *Ouber v. Guarino*, 293 F. 3d 19, 32 (1st Cir. 2002); *accord Scarpa v. DuBois*, 38 F.3d 1, 7 (1st Cir. 1994) (the state and federal constitutional standards for ineffective assistance claims are the same), *cert. denied*, 513 U.S. 1129 (1995).

24

opportunity to escape and avoid combat." The difficulty for the petitioner was that his credibility concerning whether the victim cut the petitioner's neck had little direct bearing on the central issue of whether he left the apartment, went to his car, and then returned to the apartment before stabbing the victim. *Vinton*, 432 Mass. at 184. In the face of testimony from three witnesses that the petitioner left and returned before the stabbing, the failure of trial counsel to focus on the "cat scratch" on the petitioner's neck, *Vinton*, 132 Mass. at 185, was an eminently reasonable tactical decision. The motion judge observed that photographs were a two-edged sword that might have enraged the jury that a fatal killing resulted from such a minor wound. *Vinton*, 432 Mass. 185.

Finally, the SJC concluded that trial counsel's failure to call a police officer to the stand in order to impeach Ms. Bergeron's testimony regarding the petitioner's actions when he left the apartment did not constitute ineffectiveness. *Vinton*, 432 Mass. 187. The police officer's testimony would have added little to the defense and might have opened up dangerous areas since it was unclear what the police officer would say and whether his testimony would help or harm the petitioner's cause.

In sum the SJC determined that the petitioner had failed to show that there was a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 694. The state court adjudication was not an unreasonable application of *Strickland*.

25

## CONCLUSION

For the above-stated reasons, the motion to dismiss should be allowed.

Respectfully submitted,

THOMAS F. REILLY
ATTORNEY GENERAL

*Annette C. Benedetto*
Annette C. Benedetto
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200
BBO No. 037060

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the attached documents was served upon the petitioner by first-class mail, postage pre-paid, on June 16, 2004, addressed to him as follows:

Christopher Vinton, pro se
MCI Cedar Junction
P.O Box 100
South Walpole, MA 02071

*Annette C. Benedetto*
Annette C. Benedetto
Assistant Attorney General