UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHRISTOPHER VINTON, )
    Petitioner )
  ) Civil Action No. 04-10209-DPW
V. )
  )
DAVID NOLAN, )
    Respondent )

PETITIONER'S OPPOSITION TO MOTION TO DISMISS
AND REQUEST FOR ISSUANCE OF WRIT OF HABEAS CORPUS

    The petitioner continues to pursue his claims under subsections (c) & (f) of Ground One, concerning the ineffectiveness of trial counsel, which the respondent agrees are properly exhausted and preserved for a decision on the merits by this court. (Respondent's Memo., p. 15) The petitioner withdraws his claim under subsection (e) of Ground One, concerning the ineffectiveness of trial counsel, as its inclusion was a clerical error.

I. THE PETITIONER WITHDRAWS HIS CLAIM UNDER SUBSECTION (e) OF GROUND ONE

    As the respondent correctly observes, subsection (e) of Ground One, concerning the failure to introduce a photo of the petitioner's hand, was not raised before the state court and is an unexhausted claim. (Respondent's Memo., p. 8) That this appears as a claim is simply a clerical error on the part of petitioner's last jailhouse assistant. No specific claim has ever been raised regarding the introduction of such a photograph. The petitioner hereby withdraws this claim, and there is no requirement in any

of the cases cited by the respondent that this petition must be dismissed as a mixed petition under the circumstances.

II. THE DECISION OF THE STATE SUPREME JUDICIAL COURT ON THE EFFECTIVE ASSISTANCE OF COUNSEL IN THIS CASE IS CONTRARY TO OR, AT BEST, AN UNREASONABLE APPLICATION OF THE STANDARD ESTABLISHED IN STRICKLAND V. WASHINGTON

The central issue in this case is whether the petitioner left the victim's home to retrieve a knife from his car and then returned to stab the victim. Commonwealth V. Vinton, 432 Mass. 180, 184 (2000). The Commonwealth presented three witnesses: Joseph Jablonski, Robert Hippert and Lisa Bergeron. Id. at 181-182. The SJC noted that the credibility of Jablonski and Hippert was questionable, as they were "friends of the victim, with criminal records, who had been drinking that day and were possible participants in the drug deal that lead to the altercation." Id. at 187. "Further undermining the credibility of Hippert and Jablonski, there was also some evidence the two had been trying to locate the [petitioner] and were seeking their own form of justice." Id. at 187, n. 8.

Bergeron, however, was a young neighborhood girl and the only state witness not involved in the drug deal or altercation. Id. at 187. As the SJC remarked, "Impeachment of Bergeron was therefore indisputably important to the defense." Id. Bergeron was, in fact, impeached, and on the very central question at issue. At the time of the incident

she made a statement to police that the petitioner left the building "walking real calm," and she did not mention seeing him go to his car and then return to the building. Id. at 186-187. The defense also called a private investigator to the stand who testified that he interviewed Bergeron six days after the stabbing and she did not mention that she saw the petitioner leave the house twice. Id. at 187. In wild contrast to these statements, at trial Bergeron testified that the petitioner walked to his car and back to the building, after which he "walk[ed] quickly" back to his car and left with spinning and screeching tires. Id.

At trial the petitioner testified that he was attacked in the victim's house while selling drugs to the three men, and that the victim pushed him against the wall and pressed a knife against his throat. Id. at 182-183. In the course of the assault, the victim cut the petitioner's throat. Id. Believing the victim was about to kill him, the petitioner grabbed a nearby knife and swung it once at the victim, killing him with a single cut to the neck. Id. The petitioner testified that he had a cut on his neck following the altercation. Id.

The petitioner's testimony concerning the cut on his neck was contradicted by the introduction of booking photos and the testimony of a police officer. Id. at 183 n. 3.

In his closing argument, defense counsel stated:

-4-

> "The suggestion may be made by the prosecution, take a look at those photos, the mugshots that Mr. Vinton wasn't hurt. You don't see marks on his neck. That is not the standard. What the standard is whether from the defendant's point of view, his self defense was reasonable, whether he felt that faced with this attack, that what he did was to defend himself from death or great bodily injury." (Tr. II, 391) Vinton at 184 n. 5.

In his closing argument, the prosecutor focused on the fact that the booking photos showed no injury, thus proving that the petitioner is a liar and none of his testimony can be believed. The prosecutor opened his discussion of the evidence as follows:

> "[P]erhaps **one of the most important pieces of evidence to come in was the last two photographs of the defendant.** It's important because it begins to tell you is this defendant telling you the truth when he gets up on that witness stand or is he lying. And you have to look at many different factors to determine whether or not someone lies to you or not. But **this jumps out at you as a tremendous aid because it is a photograph or two photographs. And they show his neck. And there is no injury to his neck. So that is a bold-faced lie. He's lying to you. You take that lie and you take it to the rest of the case because he's lying to you about what happened in the apartment and that's critical, what happened in the apartment.**" (Tr. II, 402) Vinton at 184 n. 4. (emphasis added)

The prosecutor returned to this theme in the middle of his closing argument:

> "Does the crack dealer take a knife into the house when he goes into the house. Of course he does. It's his knife. It doesn't come off the television set. **You should lump that together with the cut on his neck. That's hogwash.**" (Tr. II, 402) Vinton at 184 n. 4. (emphasis added)

The prosecutor ends his closing in the same vein:

> "**Look at that photograph of Mr. Vinton's neck if there is any question in your mind as to who is telling the truth.** This story about the knife on top of the television just doesn't cut it. It's just not there. I'm being struggled with and I just reach out and grab a knife and just happen to kill him in the throat? No way. **I get cut in my neck. There is no cut on that neck, no cut on that photograph.**" (Tr. II, 408) <u>Vinton</u> at 184 n. 4. (emphasis added)

In fact, defense counsel had taken close-up photographs clearly showing a cut on the petitioner's neck, just prior to the booking photos. <u>Vinton</u> at 185. Furthermore, several witnesses could have testified that they observed an injury to the petitioner's neck. <u>Id.</u> at 185-186. Defense counsel failed to introduce the photos or call even a single witness. <u>Id.</u> Finally, the petitioner's shirt had blood stains on the collar which the petitioner specifically requested be tested because it was his own blood from the cut on his neck. <u>Id.</u> at 186. Defense counsel failed to request funds to conduct a test on the shirt. <u>Id.</u> Defense counsel's failure to introduce the above evidence to corroborate the petitioner's testimony and support his claim of self-defense forms the basis of the petitioner's ineffectiveness claim.

A. <u>THE STRICKLAND STANDARD</u>

<u>Strickland V. Washington</u>, 466 U.S. 668 (1984), sets forth a two-pronged analysis for the claim of ineffective assistance of counsel. First, a defendant must show that counsel's performance was deficient (Performance Prong). <u>Id.</u> at 687.

Second, a defendant must then show that the deficient performance prejudiced the defense (Prejudice Prong). Id. In this case, the SJC improperly melded the two-pronged standard of Strickland, with the result that neither prong was properly applied.

(1) Performance Prong:

The performance inquiry is "whether counsel's assistance was reasonable considering all the circumstances" presented by the case. Id. at 688. This is an "objective standard of reasonableness" which must be "viewed as of the time of counsel's conduct." Id. at 688 & 690. Thus, the performance inquiry must not weigh any harm, or lack thereof, attributable to counsel's conduct, but simply examine the reasonableness of counsel's conduct in light of the circumstances of the particular case. Id. at 688-690.

This case was a clash of witnesses, making credibility a primary concern. The petitioner's only defense was that of self-defense, and he had to testify to bring out his version of events. Obviously, as the accused, the petitioner had a tough audience in the jury with respect to credibility. In such a battle of witness credibility, it is worthy to query counsel's failure to avail himself of physical evidence corroborating the petitioner's testimony and supporting his claim to self-defense.

In this case, the performance inquiry must focus on

-7-

counsel's competence in presenting the defense of self-defense. Strickland, 466 U.S. at 690. In his opening statement to the jury, counsel stated that the "evidence will show that there was a knife to Vinton's throat." (Tr. I, 171) During the trial, though, the petitioner's testimony was the only evidence presented that there was a knife to his throat. That evidence was contradicted by the testimony of a police officer and two mugshot photos. Vinton, 432 Mass. at 183 n. 3. Rather than present the physical evidence that unquestionably verified the petitioner's testimony, counsel abandoned the defense mid-stride. This is apparent in counsel's closing argument where he outright **conceded** that the petitioner's neck wasn't cut. (supra at p. 4) Counsel actually adopted the Commonwealth's evidence that the petitioner wasn't hurt, instead arguing legalese, that the petitioner need not be injured to support self-defense. (Id.) Incredibly, counsel was personally aware that the petitioner **had** been injured, because he took the photographs that clearly show the injury.

The prosecutor clearly understood the value of such photographic evidence. In his closing argument the prosecutor refers to the two mugshots as "the most important piece of evidence to come in." (supra at p. 4) The prosecutor then went on to absolutely destroy the petitioner's credibility, calling him a liar over and over again, and link this absence of injury to the central question in the case: where the

-8-

knife that killed the victim came from. (supra at p. 4-5) If the jury believed the petitioner's testimony that the victim had a knife to his throat and he grabbed a nearby knife to defend himself, then he did not go to the car and come back with a knife and there was no premeditation. However, if the petitioner is not believed, there is only one other set of facts in front of the jury: that he retrieved a knife from the car and attacked the victim. Thus, counsel's failure to present evidence readily available to him that supported the petitioner on a critical element of his claim for self-defense, which went to the heart of the case, even as he saw the defense fatally contradicted on this crucial point, was an unreasonable abandonment of the case and does not constitute the reasonably effective assistance of counsel guaranteed by the constitution. Strickland, 466 U.S. at 687. See also, Anderson V. Butler, 858 F.2d 16, 17-19 (1st Cir. 1988)(abandoning evidence promised in the opening statement generally so damaging constitutes ineffective assistance). Commonwealth V. Swan, 38 Mass. App. Ct. 539 (1995)(abandonment of affirmative defense ineffective assistance of counsel).

The SJC's analysis of the petitioner's ineffective claim drives straight to prejudice and whether the petitioner suffered any harm to his credibility. Vinton, 432 Mass. at 184-185. In this context, the SJC holds that bolstered credibility would not have assisted the petitioner with the

-9-

central question: whether the petitioner went to his car and returned to the house with a knife. Id. However, the inquiry involves much more than credibility. The proper focus of the performance inquiry is whether counsel presented a competent defense in the circumstances of the case. Strickland, 466 U.S. at 690. In this case it's clear that belief or not of the petitioner's self-defense scenario, that he had a knife pressed into his throat when he grabbed a knife and stabbed the victim, *does* go to the heart of the case: whether or not he is believed determines whether or not he went to the car to get a knife. See supra, pp. 7-8.

(2) Prejudice Prong:

To prove prejudice a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

The prosecutor referred to the two mugshots showing the petitioner had no injury on his neck as "the most important pieces of evidence to come in." (supra, p. 4) This "proof" that the petitioner was lying about his version of events, and that he was a liar generally, was the driving theme of the prosecutor's entire closing argument, and the linchpin of his case. (supra, p. 4-5) The petitioner was

-10-

absolutely blistered in the prosecutor's closing argument. (Id.)

The Commonwealth's case was not otherwise overwhelming, nor even that strong. The primary witness, Lisa Bergeron, was impeached by her own conflicting statements regarding whether or not the petitioner went to his car and returned to the house. Vinton, 432 Mass. at 186-187. This was a clash of witnesses, and defense counsel possessed indisputable physical evidence that the petitioner was cut on the neck, supporting his claim for self-defense. The face of this case would have been drastically transfigured had this evidence been presented: the prosecutor would have lost the use of his "most important pieces of evidence." and the petitioner's version of events may have been given some serious consideration by the jury. It is inconceivable that that the jury gave the petitioner serious consideration where the prosecutor was able to "prove" with photographic evidence that a key facet of the petitioner's self-defense scenario was a lie. Defense counsel's failure in this case sufficiently undermines confidence in the outcome of the trial to warrant relief under Strickland.

For the reasons detailed in the foregoing argument, the SJC misapplied the two-pronged standard or, in the alternative, unreasonably applied the strictures of Strickland in this case, and the petitioner is entitled to a writ of

habeas corpus.  <u>Williams V. Taylor</u>, 529 U.S. 362, 405 & 407-409 (2000).  <u>McCambridge V. Hall</u>, 303 F.3d 24, 26 (1st Cir. 2002).

## CONCLUSION

For the foregoing reasons the petitioner respectfully requests that this Honorable Court issue a Writ of Habeas Corpus on Ground One, sections (c) & (f) of his petition.

                Respectfully submitted,

Dated: August 18, 2004      Christopher Vinton, pro se
                   MCI-Walpole
                   P.O. Box 100
                   S. Walpole, MA 02071

CERTIFICATE OF SERVICE

I, Christopher Vinton, do hereby certify that I have served a copy of the attached Opposition to Motion to Dismiss upon the attorney for the Commonwealth by US mail on this ___ day of August, 2004.

_____
Christopher Vinton, pro se