UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE

2005 MAR 31  P 12:00

U.S. DISTRICT COURT
DISTRICT OF MASS

CHRISTOPHER VINTON, )
    Petitioner )
  )  Civil Action No. 04-10209-DPW
V. )
  )
DAVID NOLAN, )
    Respondent )

PETITIONER'S STATEMENT IN SUPPORT OF MOTION
FOR RECONSIDERATION OR, IN THE ALTERNATIVE,
FOR A CERTIFICATE OF APPEALABILITY

The petitioner seeks relief on the basis that the District Court misapplied the effectiveness of counsel standard set out in Strickland V. Washington, 466 U.S. 668 (1984), relative to trial counsel's failure to introduce credible evidence corroborating Petitioner's testimony that while the deceased held a knife to his throat, the Petitioner grabbed a weapon off a nearby television and slashed the victim one time in self-defense.[1]

1. In weighing whether evidence corroborating Petitioner's testimony of a neck wound would have influenced the jury, the Court accorded presumptive unblemished credibility to the three State witnesses, particularly Bergeron, and held that "it remained unlikely that the jury would credit [petitioner's] testimony" over the contradictory testimony of the three State witnesses.

_____

    1.          Petitioner appeals only the "Exhausted Claims" addressed by the District Court at pp. 25-41 (Habeas Claim No. I(c)(d)(f)(g)).

-2-

(DC Memo & Order, pp. 30-31)  However, as the Court noted further on in its decision, all three State witnesses had credibility issues, and "ostensibly reliable, unbiased testimony" from a private investigator (testimony that was consistent with written police statements) directly impeached Bergeron's testimony--identified by the State as the "critical evidence" of premeditation on the part of Petitioner--regarding the question of whether Petitioner left the building and returned to attack the victim. (DC Memo & Order, pp. 38-41)  Strickland requires a prejudice analysis based upon a fair reading of the actual trial evidence, not against a blindly idealized view of the State's evidence.  Id. at 381.

2.      Furthermore, the Court discounted the neck wound evidence as having "little direct bearing" on the central issue posed by the State's evidence, whether Petitioner left the building and returned.  (DC Memo & Order, pp. 29-31)  Under Strickland, however, the proper analysis must focus on the comparative strength of Petitioner's claim to self-defense, as now buttressed by the absent evidence, against a fair reading of the trial evidence. Id. at 381.  The neck wound evidence is critical to the Petitioner's self-defense claim, which in turn bears directly upon the State's version of facts, i.e., to

-3-

believe Petitioner's testimony that there was a knife to his throat that caused him to respond in self-defense, the jury could not also believe Petitioner left the building and returned with his own knife to attack the victim.

3. In fact, whether the neck wound existed at all became a critical hurdle to accepting Petitioner's claim to self-defense. The State introduced what appeared to be irrefutable proof that there never was a neck wound by way of two black and white mugshot photos that failed to reflect the neck wound. Commonwealth v. Vinton, 432 Mass. 180, 183 n. 3 (2000). In its closing, the State absolutely demolished Petitioner on this point, characterizing the two mugshots as "the most important pieces of evidence to come in," because they proved without question that the Petitioner was lying about having a knife to his throat. (Excerpts reproduced in DC Memo & Order pp. 29-30 n. 13) The prosecutor repeatedly called the Petitioner a liar, and linked this absence of neck wound evidence as proof that Petitioner left the building and returned with a knife, eviscerating his claim of self-defense. (Id.) The prosecutor clearly viewed this absence of evidence as bearing on the "central question" posed by Bergeron's testimony.

-4-

4.         Incredibly, trial counsel, himself, took color photos of Petitioner's neck wound the day following the altercation, just prior to the booking photos, witnesses were readily available to corroborate the neck wound, and blood on Petitioner's shirt was available for testing. (DC Memo & Order, pp. 31-38)  Though the severity of the neck wound is alternately minimized or highlighted in the Court's decision, as discussed infra at p. 6, regardless of severity its mere existence became a primary issue when the two mugshots presented apparently incontrovertible proof that Petitioner lied about the knife to his throat, a critical moment in his claim to self-defense.  It is furthermore fundamentally unjust that the jury was left to believe the neck wound was a complete fabrication by the Petitioner--apparent irrefutable proof that Petitioner's claim to self-defense was founded upon a lie--when the actual truth is that the wound did exist, in fact, and trial counsel possessed the evidence to establish this fact to a certainty.

5.         The Court held that trial counsel's closing "effectively anticipated and largely preempted the prosecutor's closing argument on this point."  (DC Memo & Order, pp. 29-30)

> "The suggestion may be made by the
> prosecution, take a look at these photos,

-5-

> the mugshots [showing] that Mr. Vinton wasn't hurt. You don't see marks on his neck. That is not the standard. What the standard is is whether from the defendant's point of view, his self-defense was reasonable, whether he felt that faced with this attack, that what he did was reasonable to defend himself from death or great bodily injury."

(DC Memo & Order, p. 30) To characterize this closing as curative is a fantastic distortion of reality. Trial counsel effectively <u>conceded</u> that the neck wound never existed, hedging instead with the legalistic aside that a wound was not required under law anyways.

5.  This case presents a classic battle of witness testimony. The testimony of Lisa Bergeron is identified by the prosecutor as "critical evidence" of premeditation, and she was directly impeached on this so-called "central question" of whether Petitioner left the building and returned by "ostensibly reliable, unbiased testimony" of a private investigator, which was consistent with the initial written police statements. (DC Memo & Order, pp. 38-41) The introduction of corroborative evidence proving without question the existence of the neck wound would leave Petitioner unimpeached and equally or more believable than the prosecution witnesses. Under this backdrop, it mocks reality to suggest that apparently incontrovertible photographic proof that the Petitioner

-6-

outright lied about the crucual moment in his claim of self-defense had no effect on the jury; or, stated in the positive, that the comparative strength of Petitioner's self-defense claim--now unimpeached and supported by independent evidence on the crucial moment--would not have influenced the jury. Particularly in light of the prosecutor's blistering closing argument in which his repeated references to the Petitioner as a liar were substantially supported by unchallenged and apparently irrefutable photographic evidence, effectively eviscerating the factual basis of Petitioner's claim to self-defense. (Excerpts reproduced in DC Memo & Order at pp. 29-30 n. 13)

7.      The Court went on to examine each item of corroborative evidence in isolation, and in the course of this inquiry the very character and significance of the items were recast to support incompatible conclusions, contrary to the "totality of evidence" requirement of Strickland, 466 U.S. at 381. The color neck wound photos were denigrated on one hand as reflecting a minimal wound that may have inflamed the jury against the Petitioner, yet the testing of the bloody shirt and corroborative witnesses were held insignificant because the jury could have found it was the Petitioner's blood on the shirt

-7-

anyways. (DC Memo & Order, pp. 31-41)  If the blood on the shirt is to be credited to Petitioner, this very finding undermines the Court's rationale that the neck wound was so minimal as to inflame the jury.  It was a serious enough wound to his _throat_ that blood flowed to stain his shirt, which is hardly a walk in the park.  And, as noted _supra_ at pp. 1-2, the Court in one context credits the unblemished credibility of the three State witnesses to erect an insuperable hurdle for the Petitioner in a battle of credibility, yet held that the three State witnesses were thoroughly incredible and impeached when discounting the necessity of further defense evidence. (DC Memo & Order at pp. 29-31 & 38-41)  This bipolar treatment of the evidence is fundamentally unfair and inconsistent with the requirement that the whole of the absent evidence be joined with Petitioner's evidence of self-defense, and then weighed against the trial evidence under a single, consistent interpretation of the evidence. _Strickland_, 466 U.S. at 381.

                                      Respectfully submitted,

Dated: March 26, 2005        Christopher Vinton, pro se
                                     MCI-Walpole
                                     P.O. Box 100
                                     S. Walpole, MA 02071

CERTIFICATE OF SERVICE

The petitioner, Christopher Vinton, hereby certifies that he has served a copy of the attached Motion for Reconsideration, Notice of Appeal, and Statement in Support of both upon the attorney for the Commonwealth by U.S. Mail on this 27th day of March, 2005.

_____
Christopher Vinton, pro se